[Civ. No. 158.   First Appellate District.—February 15, 1906.]

## O. E. FAIRFIELD, Appellant, v. PACIFIC COAST STEAMSHIP COMPANY, Respondent.

COMMON CARRIER—BILL OF LADING—CONTRACT TO FORWARD BY CONNECTING CARRIER.—Under section 2201 of the Civil Code, a steamship company which accepts merchandise to be forwarded beyond a particular port, under a bill of lading by which it contracts to carry it to such place and there deliver it to the consignee, or if it was to be carried beyond such place, to there deliver it to some connecting carrier, absolves itself from further liability upon making a delivery to a connecting carrier at such intermediate port. And a statement in the bill of lading that the consignee was at a place beyond such port was notice to the steamship company that the merchandise was not to be delivered to him there, but that it was to be delivered to a connecting carrier.

ID.—MARKING OF PACKAGES—DESIGNATION OF CONNECTING CARRIER—DELIVERY TO FORWARDER—EVIDENCE.—The marking of the packages of such merchandise with the name of the connecting carrier at the intermediate port was a sufficient designation of the carrier to which they were to be there delivered; and the fact that they were so delivered is sufficiently proved, in an action against the first carrier, by evidence that one of the vessels of the connecting carrier brought the merchandise to the place of consignment and there delivered a portion of it to the consignee.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  F. H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

Robert Ash, for Appellant.

Geo. W. Towle, Jr., for Respondent.

HARRISON, P. J.—The plaintiff herein seeks to recover damages from the defendant for a breach of its contract as a common carrier to transport certain merchandise from San Francisco to Nome and there deliver it to him. At the close of the plaintiff's case the court granted a nonsuit on the motion of the defendant, and from the judgment thereon the plaintiff has appealed.

The contract upon which the plaintiff relies for his recovery is the bill of lading issued by the defendant, in which it acknowledges that it has received "to be forwarded per steamer 'Pueblo' the articles or property enumerated hereon, to be forwarded with as reasonable dispatch as the general business of the carrier will permit, and delivered at vessel's tackle at the port, place of landing, of Seattle unto the consignee; or if shipment is to be carried beyond above-named port or landing, to a connecting carrier or forwarder, he or they paying freight at tariff rates on delivery and charges advanced by carrier." The bill of lading also stated as the name and address of the consignee, "O. E. Fairfield, Nome, Alaska," and that the packages of merchandise were marked "Pacific Clipper Line, Arlington Dock, Seattle," and had indorsed upon its face, "Freight prepaid to seaport." It was shown at the trial that in the summer of 1900 the plaintiff had written from Nome to his sister in San Francisco, directing her to purchase certain articles of merchandise for him, and that she had purchased the same and had them boxed and delivered to the defendant, and that she had received from defendant at its wharf in San Francisco the above-named bill of lading, bearing date September 11, 1900. There was no evidence of any subsequent act of the defendant or of any disposition by it of the merchandise after its receipt, but the plaintiff testified that the "Centennial," a steamer of the Pacific Clipper Line, on her last trip to Nome of that year, had his freight aboard and

landed a portion thereof, viz., a stove and two sacks of sugar; that a storm came up, and that the "Centennial," without delivering his freight, returned to Seattle; that the following spring, 1901, the freight was again brought to Nome by the steamer "Centennial," with a charge of about $80 for storage and additional freight, which the company, the Pacific Clipper Line, demanded before it would deliver it; that he refused to pay it and had never received the freight.

The order granting the nonsuit must be affirmed. The defendant did not contract, by the aforesaid bill of lading, to carry the merchandise from San Francisco to Nome, but merely agreed to carry it to Seattle and there deliver it to the consignee, or, if it was to be carried beyond Seattle, to deliver it at Seattle to some connecting carrier or forwarder. The statement in the bill of lading that the consignee was at Nome notified the defendant that the merchandise was not to be delivered to him at Seattle, and that it was to be delivered to a connecting carrier. As the defendant did not contract to carry the merchandise beyond Seattle, its liability ceased upon making a delivery there to the Pacific Clipper Line. (Civ. Code, sec. 2201; *Palmer* v. *Atchison etc. R. R. Co.,* 101 Cal. 187, [35 Pac. 630].) Although there was no direct evidence of a delivery by the defendant to a connecting carrier, the mark upon the packages "Pacific Clipper Line, Seattle," was a sufficient designation of the carrier to which they were to be delivered; and the testimony of the plaintiff that one of the vessels of that line—the steamer "Centennial"—brought the freight to Nome, and delivered a portion of it to him, was sufficient evidence that the defendant had delivered the merchandise to that carrier. The plaintiff, therefore, failed to sustain the allegation of his complaint that the defendant had contracted to carry the merchandise to Nome; and as it appeared that the defendant had complied with the contract, which the plaintiff offered in evidence, by delivering the merchandise at Seattle, the nonsuit was properly granted.

The judgment is affirmed.

Cooper, J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 10, 1906.