[Civ. No. 151.   Third Appellate District.—May 15, 1906.]

## JOHN T. DAVIS, Respondent, v. JOSEPHINE TRACHS-LER, and FRANK TRACHSLER, Appellants.

SALE OF REAL PROPERTY—LIMITED POWER OF AGENT—SCOPE OF AUTHORITY.—A contract for the sale of real estate made by an agent whose authority was specially conferred in writing to sell lands in parcels of twenty and forty acres each, upon terms specified, agreeing to dispose of a ten-acre tract upon other terms than those specified, was outside of the scope of his authority, and if not sanctioned in any way by the principal, is void as to him.

ID.—SALE MADE AFTER CANCELLATION OF AUTHORITY.—A contract to sell real estate made by the agent after cancellation of his authority as to future contracts without consent is void.

ID.—DUTY OF PURCHASER TO INQUIRE AS TO AUTHORITY OF AGENT.—Where a receipt and contract of sale is made by a person holding himself out to be an agent of the seller, and signed by him as agent, it is incumbent upon the purchaser who thus had actual notice of the agency, to ascertain the scope of the agent's authority, and whether he has the right to make or perform the contract.

ID.—PURCHASER MUST LOOK TO UNAUTHORIZED AGENT.—A purchaser from a professed agent who signed a contract of sale in excess of his authority, without concurrence or fault of the principal, must look to the professed agent alone for the redress of whatever wrong he may have suffered.

ID.—SPECIFIC PERFORMANCE—STATUTE OF LIMITATIONS.—A cause of action to compel specific performance by a principal of a contract for the sale of land signed in his name by an agent, which, if it existed at all, arose when the principal refused to contract with the purchaser, more than four years before the commencement of the action, is barred by the statute of limitations.

APPEAL from an order of the Superior Court of Stanislaus County denying a new trial.   L. W. Fulkerth, Judge.

The facts are stated in the opinion of the court.

Edward J. Hill, for Appellants.

A. E. Ball, for Respondent.

BUCKLES, J.—This is an action to quiet title, commenced January 21, 1903. There was no demurrer. Defendants Josephine Trachsler and Frank Trachsler answered and set up their claim of interest in the land. The record does not disclose that either of the other defendants appeared at all. The judgment was against all of the defendants. Frank Trachsler and Josephine Trachsler moved for a new trial, which motion was denied, and they appeal from the order denying them a new trial. The appeal comes here on a bill of exceptions.

On July 13, 1896, the respondent was the owner of two thousand five hundred acres of land in Stanislaus county, and on that day entered into a written contract with one George W. Hopkins, whereby he appointed said Hopkins his agent for the sale of said lands, upon the following considerations: "Second party is authorized to sell the said lands in parcels of twenty and forty acres each as indicated on the plat hereto attached, at the minimum prices noted on said plat, and upon the following terms, to wit: Ten (10) per cent of the purchase price payable at time of sale, and the balance payable in eight equal semi-annual installments, with interest on deferred payments at the rate of six (6) per cent per annum. Contracts of purchase and sale shall be executed by said first party and the purchaser, and when any purchaser shall have paid one-half of the purchase price of the land purchased by him, he shall be entitled to receive from said first party a grant, bargain and sale deed of the same, and the purchaser shall execute a mortgage to said first party for the amount due thereon, payable in accordance with the terms named in the contract. Said second party's compensation for managing the sale of said lands shall be ten (10) per cent of the purchase price payable out of the first payments received on account of the purchase price. The said second party shall furnish said first party full reports quarterly of sales effected and payments made and pay over to said first party all sums received by said second party, in excess of his commissions as above provided."

On December 14, 1897, respondent indorsed upon said contract, "This day the within contract is canceled. J. T. Davis."

And at the same time the said George W. Hopkins indorsed on said contract under the indorsement of cancellation: "Except as to sales already made, Geo. W. Hopkins."

The answer and cross-complaint of Frank Trachsler avers that he purchased ten acres of said land on May 24, 1897, for which he was to pay in installments the sum of $350.00, and entered into a written contract with plaintiff in relation to such sale, and that he made payments thereon to the amount of $276.80, which was paid at the time and in the amounts as follows, to wit: On May 24, 1897, the sum of $35.50; March 1, 1897, the sum of $39.40; June 18, 1898, the sum of $18.90; September 1, 1898, the sum of $39.40; January, 1899, the sum of $39.40; June 21, 1899, the sum of $39.40; August 18, 1899, the sum of $39.40; May 20, 1900, the sum of $18.90; and April 6, 1900, the sum of $6.50, making a total of $276.80.

The first and second payments, amounting to $74.90, were made before the agency of Hopkins was canceled. George W. Hopkins testified that he made sale of the ten acres to the said Frank Trachsler on March 24, 1897, for $367.87 and received thereon on that day the sum of $35.40 and received the balance of said $367.87 in different sums at different times and that he gave to said purchaser the following receipt and agreement:

"San Francisco, May 24, 1897.

"Received this day of Frank Trachsler the sum of thirty-five (35) Dollars, in consideration of which I agree to sell to said Frank Trachsler at any time before March 1, 1898, that certain real property situated in Stanislaus county, California, more particularly described as the East ½ of the West ½ of lot No. One Hundred and Sixteen (116) of Elmwood Colony lands, the same containing about ten (10) acres of land, at the price and upon the terms and conditions hereinafter provided, the price thereof to be Three Hundred and Fifteen (315) Dollars, payable as follows:—to wit, the sum of thirty-nine (39) Dollars and Forty (40) Cents, payable on the first day of March, and an equal amount each six months thereafter, until the said sum of Three Hundred and Fifteen (315) Dollars shall have been fully paid, together with interest on all deferred payments at the rate of six (6) per cent per annum, interest payable annually. In event that said Frank Trachsler shall on or before March 1, 1898, cause to be planted in fruit

trees, not less than five (5) acres of said land, then the pay-
ments herein provided to be made may at the option of said
Frank Trachsler become due and payable Twelve months after
the dates herein provided.    The said land to be subject to a
twenty (20) foot strip of land lying along the northerly line
thereof for road purposes, also to right of way for necessary
irrigating ditches.    Time is of the essence hereof.

"Executed in duplicate.

"GEO. W. HOPKINS,

"Gen'l Agt. for J. T. Davis.

"FRANK TRACHSLER.

"Witness:

"F. McCRACKEN."

The answer and cross-complaint of Josephine Trachsler
avers that she claims some interest in a part of said land, and
alleges that on the tenth day of April the plaintiff agreed in
writing to sell her ten acres thereof for the sum of $375
and that she agreed to purchase and that she had paid $280.69
thereof.    The contract made with this purchaser was not
introduced in evidence, but the following receipt was ad-
mitted:

"$42.50                     "San Francisco, March 1st, 1899.

"Received from Josephine Trachsler Forty-two & 50-100
Dollars, Being payment due this day on account of purchase
price of the West half of the West half of lot No. 116 Elm-
wood Colony Lands, per contract of date Apl. 10, 1898.    (Ex.
12 in same form as Defts. Ex. 8.)

"GEO. W. HOPKINS,

"Gen'l Agt. for J. T. Davis."

According to the testimony of Hopkins this sale was made
March 28, 1898, and according to the above receipt it was
made April 10, 1898, but whether made March 28th or April
10th he had no power to make this sale because his indorse-
ment on the original power is equivalent to his consenting
thereto, excepting the sales made up to that date, December
14, 1897.    Therefore the motion for new trial was properly
denied as to her.

On further examination the witness Hopkins said he did
not remember when he signed the indorsement, "except as to

sales already made," but he knew it was signed by him after he had sold all the land he sold to the defendants in the action. This, however, cannot be reconciled with his written receipt that it was April 10, 1898, and his other statement that it was March 28, 1898.

He would not swear that the cancellation was not signed at the time it bears date. Says he went with McCracken to Davis with all the contracts and asked him to sign them, but he refused because no money had been paid to him. The defendants knew Davis had refused to sign these contracts and this was prior to the cancellation. The respondent J. T. Davis testified that he at no time dealt with the defendants and at no time did he receive any money from them, had no contracts with any of them and recognized no rights they had in the land. McCracken and Frank Trachsler came to him and wanted him to sign some contracts for the sale of the land. He said that until the money was paid him he would have nothing to do with them and would sign no contracts made with Hopkins. This was October 27, 1897. On cross-examination he said: "The bringing of this action was the first time I notified defendants that I would not carry out the terms of the deal they made with Hopkins." Says he at no time refunded defendants the money they claimed to have paid him. He further testified in rebuttal as follows: "I told Hopkins I knew of no sales, and I repudiated all contracts at that time for the reason that no money had been paid to me or anybody for the land. I never received any money from any of these defendants or Hopkins. The cancellation of the contract with Hopkins was signed by Hopkins and myself at the time it was dated."

This is the substance of all the testimony given in the case so far as relates to the appellants. In his cross-complaint appellant Frank Trachsler accepts the "rescission" of the contract and demands the respondent repay to him the money he alleges to have paid for the land alleged to have been purchased by him, demands a lien on said lands to secure payment of the amount of the payments made and that said lien be foreclosed. The answer of respondents to said cross-complaint denies any and all obligation to defendant, denies receiving anything from him, and pleads the statute of limitations as to the demand on him for the return of the money

paid Hopkins. There is no conflict in the evidence as to the time when respondent refused to make the contract with appellant and that such refusal was made prior to December 14, 1897, which was over five years before the action was commenced. Appellant kept on making his payments to Hopkins up to April 6, 1900; this last payment being made two years, nine months and seventeen days before the action was commenced. If he had any cause of action to compel performance it arose when appellant refused to contract with him and the statute of limitations (period of four years) would have run against such action. The court found all the allegations of plaintiff's complaint to be true and that defendants have no interest in the land, are not entitled to a lien thereon; that they have no contract of purchase with plaintiff; that plaintiff never received any money from any of them; that defendants have no cause of action against plaintiff, and that if they had any claim against plaintiff the same is barred by the statute of limitations. The question first to be determined by the court is, Was the sale made by G. W. Hopkins to Frank Trachsler on March 24, 1897, within the scope of Hopkin's authority under the appointment of July 13, 1896? Authority to an agent to sell real estate must be in writing (Civ. Code, sec. 1624, subd. 69), and his actual authority is only such as the principal intentionally confers or intentionally allows the agent to think he possesses (Civ. Code, sec. 2316). There is no testimony tending to show the instrument by which Hopkins was appointed was recorded. But it was known by appellant that he was holding himself out to be the agent of Davis. The receipt and contract of May 24, 1897, was signed as agent. The appellant having actual notice of the agency, it was incumbent on him to ascertain the scope of authority possessed by Hopkins (*Solari* v. *Snow,* 101 Cal. 387, [35 Pac. 1004]), and whether he had any right to make contracts of sale and especially the kind he made with appellant. (*Mudget* v. *Day,* 12 Cal. 139; *Hayes* v. *Campbell,* 63 Cal. 143; *Stetson* v. *Briggs,* 114 Cal. 514, [46 Pac. 603].) An agent can only bind his principal when he acts within the scope of his authority. The agency of Hopkins was a special agency, with all his powers fixed and determined in the instrument appointing him, and on which the appellant himself relies. No power was given to sell the land in less quantity than twenty-acre

lots, yet he sold a ten-acre lot to appellant. He had no power to stipulate with the purchaser for any terms other than those named in his appointment, yet he contracted with appellant that should he plant half of said ten acres in fruit trees on or before March 1, 1896, then at the option of appellant the payments would be extended to twelve months. This he had no power to do. He made no provision in his contract for procuring a deed when one-half of the purchase price was paid and for the purchaser giving a mortgage for the balance of the purchase price as in his appointment provided. His plain duty was that when he had found a purchaser who was willing to purchase a twenty or a forty acre lot on the terms and conditions mentioned in the instrument by which he was appointed, to bring such person to his principal, when it would have been the duty of the principal to make a contract to purchase, if satisfactory to him, with such purchaser on the terms named. Of course, appellant had the right to collect the first installment, which must be ten per cent of the purchase price when the sale made by him was such a sale as he had power to make, and not otherwise. There is nothing in the bill of exceptions to indicate that appellant ever went into possession of the ten acres. He does not appear to have been a witness at the trial.

We think the sale to appellant was one made entirely outside the power of the agent Hopkins to make, and not having been sanctioned or in any way ratified by Davis, is void as to him.

Neither the question of rescission or forfeiture is involved in this case. The agent, through no fault of the respondent, exceeded his authority in dealing with the appellant, and the appellant knowing the scope of authority of Hopkins, or it being his duty to know, must look to Hopkins for the redress of whatever wrong he may have suffered.

The order denying the motion for a new trial is sustained.

Chipman, P. J., and McLaughlin, J., concurred.