[L. A. No. 11369. In Bank.—November 30, 1932.]

CALIFORNIA SAVINGS & COMMERCIAL BANK (a Corporation), Appellant, v. HARRIETTE E. WHEELER et al., Defendants; FRAZIER McINTOSH, as Executor, etc., Respondent.

Edgar K. Brown and Leo B. George for Appellant.

Frazier McIntosh, *in pro. per.,* for Respondent.

Chandler, Wright & Ward, *Amici Curiae* on Behalf of Respondent.

WASTE, C. J.—A rehearing was granted in this case in order to give further consideration to the contention of appellant that the alteration in the mortgage was made by the husband of defendant Wheeler as her lawful agent. Upon such further consideration, we are of the opinion that such was not the fact. For that reason, and for the other reasons hereinafter expressed, we adopt our former opinion, with additional comment, viz.:

"Plaintiff appeals from a judgment in favor of defendant Wheeler in an action brought by plaintiff to foreclose a mortgage.

"The original complaint named Harriette E. Wheeler as sole defendant. The complaint was in the usual form for a foreclosure action, alleging that defendant Wheeler and others had executed a note in favor of plaintiff in the sum of $24,500, bearing interest at the rate of seven per cent (7%) per annum; that certain payments had been made; that the balance was unpaid; that to secure this note defendant Wheeler and others executed a mortgage on certain lots in Venice, California. Plaintiff prayed that the mortgage be foreclosed; that the lots be sold, and that plaintiff be given a personal judgment against defendant Wheeler for the difference between the amount received on such sale and the amount owed, if any be found to exist. Defendant Wheeler admitted the execution of the note and mortgage alleged in the complaint and, by way of affirmative defense, alleged that at the time of the execution of the note and mortgage one Edgar K. Brown was the attorney and business associate of defendant's deceased husband; that at such time Brown was the vice-president and liquidating agent of plaintiff corporation; that said Brown is now one of the attorneys for plaintiff; that defendant's signature to the note and mortgage was secured by certain alleged representations of Brown; that defendant's husband was to be credited with all expenditures made by him for improvements on the prop-

erty; that such credit has not been given; that plaintiff has erroneously applied all payments on the note to the release of lots owned by Brown.

"At the trial it developed that the note and mortgage relied on differed in several important respects from those pleaded, and that Brown and his wife were parties to the note and mortgage. Plaintiff contended that the note and mortgage pleaded had been altered by the consent of the parties thereto. The trial court permitted plaintiff to amend to set up the alterations and to join the Browns as party defendants. The amended complaint joins the Browns and alleges the alterations. The Browns answered, admitting all of the allegations of the amended complaint. Wheeler answered, denying that any of the alterations had been made with her knowledge or consent. During the trial on the issues thus formed, it developed that the note and mortgage had been altered in three material respects:

"1. The interest rate on the note had been changed from 7 to 6 per cent.

"2. Eleven lots were eliminated from those described in the mortgage, because it was discovered that said lots were not owned by the mortgagors.

"3. The original mortgage had expressly excluded from its operation a 12-foot strip along the side of one lot. This strip had been excluded because it had been deeded to a city for a public purpose. Subsequently this strip was deeded back to the mortgagors, and the plaintiff bank crossed out the excluding clause, thus attempting to include within the mortgage this strip. This was undoubtedly done with intent to include the strip within the mortgage.

"The trial developed into a controversy as to whether these alterations had been made prior to the execution of the note and mortgage, or subsequent thereto, and whether such alterations had been made with the knowledge and consent of defendant Wheeler. The court found, on evidence which appellant admits is substantially in conflict, that the alterations were intentionally made by the plaintiff subsequent to the execution of the note and mortgage, with the knowledge and consent of the Browns, but without the knowledge or consent of defendant Wheeler, and that each of said alterations was a material one. Based on these findings, the trial court entered judgment against the Browns and in

favor of defendant Wheeler, extinguishing in her favor all executory obligations on her part under the mortgage. Plaintiff appealed from the judgment in favor of defendant Wheeler. The Browns did not appeal and, as to them, the judgment has long since become final. Pending appeal, defendant Wheeler died, and the executor of her estate has been substituted as respondent.

"The District Court of Appeal, Second Appellate District, Division One, in an opinion prepared by Bishop, J., *pro tem.*, and concurred in by Conrey, P. J., and Houser, J. (*California Savings & Commercial Bank* v. *McIntosh,* (Cal. App.) [1 Pac. (2d) 1080]), affirmed the judgment of the trial court. We are of the opinion that the decision of that court correctly and properly disposes of the questions involved on this appeal. We, therefore, adopt as part of the opinion of this court the opinion of the District Court of Appeal, which is as follows:

" 'Plaintiff was denied all relief against defendant Wheeler in this action to foreclose a mortgage, because her (Wheeler's) consent was not given to a post execution alteration of a mortgage by which some of her property was added to its embrace. We are of the opinion that the unapproved alteration was properly found to have relieved her of all liability under the mortgage.

" 'The lot involved was one of a number deeded to defendant Wheeler's husband and to her codefendant Brown in September, 1923. At the time of the execution of the mortgage, which followed soon after the deed, the northwesterly twelve feet of this one lot had been deeded to a city for some public purpose, so that portion of the lot was omitted from the property included in the mortgage by employing the words, immediately following the reference to the lot, "excepting the northwesterly twelve feet thereof". Some time later, after March 26 of the succeeding year, probably, when the city reconveyed the strip, the mortgagee, plaintiff here, made several changes on the face of the mortgage, among others being the elimination of the words last quoted, which resulted in the mortgage reading as though the whole of the lot were included. This tinkering was done with the approval of defendant Brown, who was potent in plaintiff's councils, and for the purpose of this opinion we are assuming it was done with the consent of

defendant Wheeler's husband. It was not done with her consent.

■ "'The effect of the unauthorized alteration of an executed contract is declared in section 1700, Civil Code, in these words: "*Extinction by unauthorized alteration*. The intentional destruction, cancellation, or material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act." That an alteration which results in placing property for the first time under a mortgage lien is a material one, is obvious. Appellant would escape the paralyzing effect of the section by securing a finding that there was no fraud involved here, and the alterations were made to correct a mutual mistake. So far as concerns the change in the mortgage whereby eleven lots were eliminated from its burdens, because included in the mistaken belief that they belonged to the mortgagors, such a finding might be made, but there is no serious contention advanced that the trial court could have found (and it did not find) that the northwesterly twelve feet was originally omitted through error or subsequently included to correct a mistake. ■ The absence of a fraudulent purpose in making the alteration does not cure it of its deadening influence. Section 1700, Civil Code, does not recognize any such limitations and the cases cited by appellant do not support the conclusion that a material alteration, i. e., "one that works some change in the rights, interest or obligations of the parties to the writing" (*Lasky* v. *Bew*, [1913] 22 Cal. App. 393 [134 Pac. 358, 360]), is harmless if not in furtherance of a fraudulent purpose.

■ "'The finding that defendant Wheeler did not consent is challenged on the ground that her husband consented and he as her agent thus bound her. The twelve-foot strip in question was community property. Appellant so contends, and the evidence, so far as brought to us, is in harmony with this conclusion. Defendant Wheeler's signature to the mortgage, then, was not an idle act, but was required. (Sec. 172a, Civ. Code.) Her husband's agency did not, apparently, include the right to sign for her. At least he did not. ■ Furthermore, authority to make or consent to an alteration in an executed contract must plainly appear

from the evidence; it will not be presumed from the relation of principal and agent. (*Langenberger* v. *Kroeger*, [1874] 48 Cal. 147 [17 Am. Rep. 418]; *Walsh* v. *Hunt*, [1898] 120 Cal. 46 [39 L. R. A. 697, 52 Pac. 115]; *Dozier* v. *National Borax Co.*, [1917] 35 Cal. App. 612 [170 Pac. 638]; *Hengehold* v. *National Creamery & Produce Co.*, [1922] 60 Cal. App. 79 [212 Pac. 239].) We assume that a finding that defendant's husband was her agent would be supported by the evidence. This does not better appellant's position, however, for there is no evidence that, within the scope of the agency, he had authority to add property to the mortgage she had executed.

" 'Even if appellant is correct in the other points it presents, the result will not be changed. There may be no evidence supporting the finding that certain representations were made, but a contrary finding would not remove the obstacle to its recovery already discussed. It may be that the evidence does not support the finding that lot 22 was released, but as the appeal is not from the judgment as it affects defendants Brown, this is an error which, if corrected, would still leave defendant Wheeler entitled to judgment. Appellant argues that the reduction in the interest rate in the note, which the mortgage secured, was not a material alteration. We do not need to determine whether it was or not for a deficiency judgment against defendant Wheeler was waived and there can be no recovery on the note in any event.' "

■ Supplementing what has already been said on the material alteration point, we desire to add that obviously any unauthorized change in a material respect destroys the integrity of the instrument as the contract which the maker has executed. After the alteration, it ceases to be the maker's contract, and, as far as he is concerned, becomes void and of no legal effect. This court said in *Commercial & Savings Bank of Stockton* v. *Foster*, 210 Cal. 76, 81 [290 Pac. 583]: "Appellant contends that she signed the mortgage in the office of respondent's attorney, and that the clause in question was added by respondent later without her knowledge or consent. If this were so, it would be clear that the respondent bank forfeited all rights under the mortgage, because it is the well-settled law in this state that the material alteration of an instrument after its execution

by one party without the consent of the other renders it utterly void and of no legal effect as far as the altering party is concerned (Civ. Code, sec. 1700; 1 Cal. Jur. 1073 et seq.)." In other words, a material alteration renders the instrument absolutely null and void, and prevents recovery upon it to any extent. (*Walsh* v. *Hunt,* 120 Cal. 46, 50 [39 L. R. A. 697, 52 Pac. 115].)

As to the agency point, the following comments are pertinent, in addition to what has already been said: Inasmuch as the contract here involved dealt with real property, the only way an agency relation could have been created would have been by a written authorization. Section 2309 of the Civil Code provides: "An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." The evidence is clear that at no time did Mr. Wheeler have written authority to represent Mrs. Wheeler. It is obvious, therefore, that he could not, as her agent, have lawfully authorized the alteration.

The judgment appealed from is affirmed.

Tyler, J., *pro tem.*, Langdon, J., Curtis, J., Shenk, J., and Seawell, J., concurred.

Rehearing denied.